**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

AmGUARD Insurance Co., dba Berkshire
Hathaway GUARD Insurance Companies,

        Plaintiff,

        v.

Anthony West and Chrisitan Parrish,

        Defendants.

Case No. 2:24-cv-4119

District Judge James L. Graham
Magistrate Judge Chelsey M. Vascura

Opinion and Order

Plaintiff AmGUARD Insurance Company brings this declaratory judgment action under 28 U.S.C. § 2201.  AmGUARD seeks a declaration that it has no duty to indemnify its insured, defendant Anthony West, for any monetary damages he may be liable to pay Chrisitan Parrish in a civil assault action filed in state court.  This Court has diversity jurisdiction, as AmGUARD is a Nebraska corporation with its principal place of business in Pennsylvania, and West and Parrish are both Ohio residents.  *See* 28 U.S.C. § 1332.

This matter is before the Court on cross-motions for summary judgment.  *See* Fed. R. Civ. P. 56.  As will be explained below, AmGUARD's duty to indemnify depends on whether West was acting in self-defense when he caused bodily injury to Parrish.  Because there are genuine disputes of material fact regarding the nature and circumstances of West's alleged tortious conduct, the Court denies the motions for summary judgment.

## I.      Background

### A.      The Altercation between West and Parrish

West and Parrish got into a physical altercation on the night of January 20, 2022.  They knew each other because both worked as plumbers, and they gathered with a few friends on residential property owned by Parrish's father in Orient, Ohio.  They were playing cornhole and wagering money on the outcomes of their matches.  West and Parrish got into a disagreement, apparently over the terms of a double-or-nothing bet and over perceived insults in comments which West made to Parrish.

What occurred next is disputed on the record.  One version of events is that West kicked Parrish in the face, using "his steel-toed boots as a weapon." Doc. 19-1 at PAGEID 234, 236.  This

1

version is supported by a limited number of statements made by Parrish and the prosecutor at the sentencing hearing in a criminal prosecution against West for felonious assault.  Parrish stated he almost died and had numerous facial fractures, a broken jaw, and lingering neurological issues with seizures.  *See id.* at PAGEID 236-237.  Parrish's mother stated during the sentencing hearing that West kicked Parrish "repeatedly in the face" and "just left him there in his own pool of blood," but it is unclear whether she witnessed any part of the altercation  *Id.* at PAGEID 238.

West offers a different version of events in the affidavit he submitted in this case.  He says Parrish was intoxicated, got angry, and tried to tackle him to the ground.  *See* West Aff. (Doc. 20-1), p. 3.  As they wrestled, Parrish threw multiple punches into West's back and head.  *See id.*  West did not throw any punches in return, but tried only to "restrain" Parrish from hitting him.  *Id.*  At some point, Parrish punched, grabbed, and attempted to bite West's scrotum, causing "severe pain" to West.  *Id.*  West unsuccessfully attempted to separate himself from Parrish, who "continued coming at" him.  *Id.* at p. 4.  West "kicked at [Parrish] to keep him away as a reaction" to Parrish's attack.  *Id.*  West then walked away with Parrish "laying on the ground," but with "no blood or any sign he was seriously hurt."  *Id.*

**B.**     **The State Court Criminal and Civil Cases**

Criminal charges were brought against West in the Franklin County Court of Common Pleas.  *See State v. West*, Case No. 22 CR 292.  He pleaded guilty to one count of felonious assault, a second degree felony punishable by up to an eight year definite term of imprisonment.  *See* O.R.C. 2903.11.  West was sentenced to a three-year period of community control.  *See* Doc. 1-4.  According to West, he pleaded guilty despite believing that he acted in self-defense because he was assured by his attorney and the prosecutor that he would not be given jail time.  *See* West Aff., p. 4.

Parrish filed a civil action against West in the Franklin County Court of Common Pleas in 2023.  *See Parrish v. West*, No. 23 CV 372.  The complaint asserted tort claims for assault and for negligence.  The complaint alleges that Parrish has incurred over $175,000 in medical expenses to treat the injuries caused by West during the January 20, 2022 altercation.  West filed an answer asserting several defenses, including that he acted in self-defense.  According to the Court of Common Pleas' docket sheet, the civil case is stayed pending mediation efforts.

**C.**     **The Insurance Policy**

West and his wife are insureds under a homeowner's policy issued by AmGUARD and covering the relevant time period.  *See* Doc. 1-2.  The Policy, in a provision called "Coverage E," covers the insured "for damages because of 'bodily injury' or 'property damage' caused by an

2

'occurrence' . . . ." *Id.* at PAGEID 45 (Section II – Liability Coverages, Part A). The definition section of the Policy states that "'Occurrence' means an accident" which results in bodily injury or property damage. *Id.* at PAGEID 30 (Definitions, Part B.8).

In a section which outlines various exclusions from coverage, the Policy states in "Exclusion E.1" that coverage does not apply to bodily injury or property damage "which is expected or intended by" the insured, even if the resulting bodily injury or property damage "[i]s of a different kind, quality or degree than initially expected or intended." *Id.* at PAGEID 47 (Section II – Exclusions, Part E.1). An exception to this exclusion states: "However, this Exclusion E.1 does not apply to 'bodily injury' or 'property damage' resulting from the use of reasonable force by an 'insured' to protect persons or property." *Id.*

### D.  AmGUARD's Complaint for Declaratory Relief

West filed an insurance claim requesting that AmGUARD defend and potentially indemnify him in the civil suit brought by Parrish. AmGUARD agreed to defend West under a reservation of rights.

AmGUARD filed this action seeking a declaration that it does not have a duty to indemnify West for any judgment against him in the civil suit brought by Parrish. AmGUARD alleges that West's guilty plea conclusively establishes that his conduct was not accidental and thus does not meet the Policy's definition of an "occurrence." AmGUARD further alleges that West's conduct is excluded from coverage under Exclusion E.1.

West contends that he is entitled to coverage under the Policy's exception for injuries caused when the insured is acting in self-defense.

AmGUARD and West have both moved for summary judgment.

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III.    Discussion

In Ohio, the "normal rules of contract construction apply to the interpretation of insurance policies." *St. Marys Foundry v. Emplrs. Ins. of Wausau*, 332 F.3d 989, 992 (6th Cir. 2003); *accord Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167, 436 N.E.2d 1347, 1348 (Ohio 1982). Courts "give the words and phrases of an insurance policy their ordinary and usual meaning unless something in the contract indicates a contrary intention." *Drake v. Richerson*, No. 5:11CV1898, 2012 WL 2681413, at *4 (N.D. Ohio July 6, 2012) (citing *Ambrose v. State Farm Fire & Cas.*, 70 Ohio App.3d 797, 800, 592 N.E.2d 868 (Ohio Ct. App. 1990)).

AmGUARD argues in its motion for summary judgment that West's criminal conviction conclusively establishes that his conduct was not accidental. It points to the language of the felonious assault statute, which provides that no person "shall knowingly . . . [c]ause serious physical harm to

another." Ohio Revised Code 2903.11(A)(1). AmGUARD contends that conduct which knowingly causes harm is not an accident and, in turn, not an occurrence for purposes of coverage under the Policy. AmGUARD also argues that such conduct excludes West from coverage under Exclusion E.1 because bodily injury was expected or intended by West when he knowingly caused serious physical harm to Parrish.[1] According to AmGUARD, West should not be able to retreat from the admission he made in his guilty plea that he knowingly caused physical harm to Parrish.

West, in responding to AmGUARD's position and himself moving for summary judgment, argues that he is entitled to coverage under the Policy's exception regarding self-defense. He contends that the guilty plea does not preclude him from being able to establish in this case that his conduct was undertaken in self-defense.

### A.      West May Overcome the Limits on Coverage by Proving Self-Defense

Before considering the effect of West's guilty plea, the Court considers whether the self-defense provision of the Policy is contractually available for him to pursue. The Court begins its analysis by considering the interplay of the Coverage E and Exclusion E.1 provisions. Under Coverage E, the Policy covers damages because of bodily injury caused by an occurrence, which is defined as an "accident." Exclusion E.1, which contains the self-defense exception, provides that coverage does not extend to bodily injury "which is expected or intended by" the insured.

AmGUARD argues that because West confessed to "knowingly" causing harm, his conduct could not have been accidental under Coverage E. *See State Auto. Mut. Ins. Co. v. Steverding*, No. 77196, 2000 WL 709021, at *5 (Ohio Ct. App. June 1, 2000) (acts intended to cause harm "are by definition not accidental"). AmGUARD asserts that this should be the start and end of the inquiry – there is no coverage under Coverage E of the Policy even if West acted in self-defense. In other words, Coverage E has a broader effect than Exclusion E.1 and is not subject to the self-defense exception.

AmGUARD's position is not supported by Ohio law. Ohio courts have long held that a provision which limits coverage to accidents and a provision which excludes intended or expected injuries are to be treated as having the same meaning and effect. This position is rooted in the recognition that "Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts." *Gearing v. Nationwide Ins. Co.*, , 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, 1118

---

[1] In neither the complaint nor its motion for summary judgement does AmGUARD discuss the nature of West's physical conduct. AmGUARD simply relies on the guilty plea to establish that he engaged in a felonious assault of some sort. The Court takes judicial notice from the state court's sentencing hearing transcript, discussed above, that the conduct entailed one or more kicks to Parrish's face.

(Ohio 1996).  The Ohio Supreme Court has thus held that these two types of provisions achieve the same result – one "by way of definition" and the other "by way of express exclusion" – and should be given the same effect.  *Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St. 3d 189, 191, 569 N.E.2d 906, 908 (Ohio 1991).

In *Snell v. Katafias*, the policy "contained both an exclusion for 'expected or intended' injuries and a provision limiting coverage to 'occurrences.'"  No. 17440, 1999 WL 148229, at *5 (Ohio Ct. App. Mar. 19, 1999).  The court held that "[a]s a matter of law, however, these policy provisions have identical meanings."  *Id.*  "As limits on the extent of personal liability coverage, the terms are essentially redundant" and thus should be analyzed the same.  *Id.  See also Willis v. Campbell*, No. 97-CA-57, 1998 WL 46685, at *3 (Ohio Ct. App. Feb. 6, 1998) (citing *Swanson* and *Gearing* in holding that a provision limiting personal-injury coverage to "occurrences" or "accidents" is "identical in effect to, and redundant with" a provision excluding "intended or expected" injuries).

That the Policy's provision limiting coverage to accidents is given the same meaning and effect as Exclusion E.1 matters because of the self-defense exception.  AmGUARD's position that the issue of self-defense should not be reached would render the exception meaningless.  The Court must avoid such a construction.  *See State v. Yoder*, 2024-Ohio-1264, ¶ 14, 241 N.E.3d 392, 396 (Ohio Ct. App. 2024).  If Coverage E and Exclusion E.1 both exclude coverage for injury caused by intentional acts, but Exclusion E.1 excepts injury resulting from the use of reasonable force in self-defense, it would defeat the exception if Coverage E always trumped and excluded coverage by screening out any non-accidental conduct.

The Court thus concludes as a matter of contract interpretation that the self-defense exception of the Policy is available for West to pursue.

As importantly, the Ohio Supreme Court has held that a self-defense claim is available to insureds as a matter of public policy even when the insurance contract itself does not provide for it.  In *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 81, 491 N.E.2d 688, 691 (Ohio 1986), the policy contained an exclusion from coverage for intended or expected injuries caused by the insured.  The insured claimed that he had acted in self-defense and should be entitled to coverage, even if he intended an injury to the alleged attacker in order to protect himself.  The Ohio Supreme Court found that the exclusion did not bar a claim of self-defense:

> [W]e find that neither the purpose behind the exclusion nor public policy is served by application of the exclusion to an insured who claims to have acted in self-defense.

> Generally, an individual may not purchase liability insurance coverage against a claim arising from his intentional infliction of injury upon the person or property of another. *Commonwealth Cas. Co. v. Headers* (1928), 118 Ohio St. 429; *cf. Kish v. Central Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 424 N.E.2d 288 [21 O.O.3d 26]. Allowing the purchase of such coverage would remove an important disincentive to the commission of intentional torts—the resultant threat, through civil damage claims, to the tortfeasor's personal assets. No purpose is served, however, by denying coverage to an insured who, while acting in self-defense, intentionally injures another. The insured who acts in self-defense does so only as a reaction to his attacker, and any injuries suffered by the attacker are not the result of the insured's misconduct.
>
> From the standpoint of an insurance company, an "expected or intended injury" exclusion prevents individuals from purchasing insurance as a shield for their *anticipated intentional misconduct*. Without such an exclusion, an insurance company's risk would be incalculable. An act of self-defense, however, is neither anticipated nor wrongful from the standpoint of the insured. The risk that an insurance company bears in providing an intentional tort defense for an insured who claims to have acted in self-defense is calculable and, from a monetary standpoint, minimal.

*Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 81, 491 N.E.2d 688, 691 (Ohio 1986) (emphasis in original) (footnote omitted). The Ohio Supreme Court concluded that the insured's "admission that he intentionally shot Thompson does not remove Thompson's injuries from the coverage of the policy" if the insured could establish that "he acted in self-defense in causing the injury." *Id.*, 23 Ohio St.3d at 82, 491 N.E.2d at 691. *See also Bailey v. Bevilacqua*, 2004-Ohio-4392, ¶ 31, 158 Ohio App.3d 382, 385 (Ohio Ct. App. 2004) ("The Ohio Supreme Court [in *Thompson*] has carved out an exception to the general rule that an insurer is not obligated to defend or indemnify an insured for injuries resulting from the insured's intentional acts in those situations when an insured acts in self-defense."); *Nationwide Mut. Fire Ins. Co. v. Pendrey*, No. L-98-1101, 1998 WL 852286, at *3 (Ohio Ct. App. Dec. 11, 1998) ("[E]ven intentional acts do not negate coverage under the terms of a policy which exclude 'expected or intentional' acts if performed in self-defense.").

Accordingly, the Court finds as a matter of contract law that West may pursue a claim of self-defense as an exception to AmGUARD's position that his intentional conduct excludes him from coverage.

**B.  West's Guilty Plea does not Preclude Him from Asserting Self-Defense Here**

AmGUARD next argues that West's guilty plea controls how his conduct should be treated for purposes of insurance coverage. AmGUARD cites *Drake v. Richerson*, where the policy contained the same provisions as the one here, defining an "occurrence" as an "accident" which results in bodily injury and also containing an exclusion from coverage for bodily injury which is "expected or

7

intended" by the insured (also called an "intentional acts" exclusion).  The insured had been convicted of felonious assault following a jury trial.  The court examined the testimony from the criminal trial, noting that the insured instigated the assault and repeatedly struck and kicked his victim.  *See* 2012 WL 2681413, at *5.  Turning to the issue of coverage, the court noted Ohio case law stating that a criminal conviction "may" establish intent for purposes of defeating coverage under an intentional acts exclusion.  *Id.* (citing *Allstate Ins. Co. v. Cole*, 129 Ohio App.3d 334, 336, 717 N.E.2d 816 (Ohio Ct. App. 1998)).

The word "may" is an important one.  In *Drake*, the facts developed from the criminal trial concerning the insured's conduct were undisputed and the insured did not assert that he acted in self-defense.  That is, the insured did not attempt to create a dispute of fact concerning the nature and circumstances of his conduct and intent.  Thus, *Drake* is distinguishable from the situation here.

Ohio courts have treated a conviction of a "knowing" criminal offense as creating a rebuttable presumption that insurance coverage is excluded under an intentional acts exclusion.  *See Cummings v. Lyles*, 2015-Ohio-316, ¶¶ 21–23, 27 N.E.3d 985, 990 (Ohio Ct. App. 2015) (discussing cases).  As one court recently put it, "Because of the [insured's] guilty plea to aggravated assault, it was his burden to rebut the assumption of intent and to create a triable issue of fact" concerning the application of the intentional acts exclusion.  *Tvergyak v. Rak*, 2025-Ohio-2680, ¶ 19, 2025 WL 2171099, at *3 (Ohio Ct. App. July 31, 2025).  *Cf. State, Crime Victim's Fund v. Gray*, No. 00AP-218, 2000 WL 1678027, at *4 (Ohio Ct. App. Nov. 9, 2000) (in a subrogation action, holding that evidence of a guilty plea is admissible and can afforded weight by the factfinder, but "it does not preclude additional litigation involving the facts and legal issues underlying the conviction").

Particularly when there is a guilty plea and a limited record from the criminal proceedings about the nature of the insured's conduct, the insured is entitled to an opportunity to rebut the presumption that coverage is excluded as an intentional act.  *See Cummings*, 2015-Ohio-316, ¶ 21 (citing *Nationwide Mut. Ins. Co. v. Machniak*, 74 Ohio App.3d 638, 641, 600 N.E.2d 266, 268 (Ohio Ct. App. 1991)).  The insured must do more than purport to withdraw or retreat from the admission of guilt – he must provide sufficient facts from which a factfinder could conclude that the intentional acts exclusion does not apply.  *See id.*, at ¶¶ 21–25 (citing *State Farm Fire & Cas. Co. v. Harpster*, No. 90012, 2008-Ohio-3357, 2008 WL 2612617, at **6–7 (Ohio Ct. C.P. July 3, 2008); *Sanders v. Nationwide Mut. Ins. Co.*, No. 95228, 2011-Ohio-1933, 2011 WL 1584427, at *8 (Ohio Ct. App. Apr. 21, 2011)); *Steverding*, 2000 WL 709021, at *6 (a blanket denial of responsibility is insufficient).

8

AmGUARD emphasizes that West's guilty plea included an acknowledgment that he was waiving any statutory or factual defenses to the charge of felonious assault. *See* Doc. 16-3. AmGUARD suggests that the waiver precludes him from asserting self-defense here. Not so, as the waiver expressly applied to any defenses which West could have raised in "this case," referring to the criminal proceeding. *Id.* The waiver does not preclude West from asserting here that he acted in self-defense.

AmGUARD contends that West's affidavit should be afforded no consideration because it is self-serving. The Court disagrees. The affidavit does more than simply deny that West engaged in assaultive behavior. It provides a detailed account of the physical altercation between West and Parrish. It contains specific facts from which a factfinder could find that West has satisfied the elements of a self-defense claim, namely, that "he was not at fault in creating the situation giving rise to the affray" and "had a bona fide belief that he was in imminent danger of bodily harm." *Bailey*, 2004-Ohio-4392, ¶ 30, 158 Ohio App.3d at 385. West states in his affidavit that the two had a disagreement over playing a double-or-nothing game of cornhole when Parrish, who was intoxicated, became angry and "came charging at" West. West Aff., p. 3. Parrish threw multiple punches at West, who returned no punches and tried unsuccessfully to "restrain" Parrish. *Id.* West states that he "kicked at" Parrish only as a way to protect himself after Parrish caused "severe pain" and "panic" to West by punching, grabbing, and attempting to bite West's scrotum. *Id.*

The Court finds that a jury, crediting West's account, could determine that he acted in self-defense and used reasonable force against Parrish to protect himself. This would be sufficient to rebut the presumption, arising from the fact West entered into a guilty plea, that coverage is excluded under Exclusion E.1. Even so, a jury could also choose not to credit West and to give greater weight to the fact of the guilty plea and to any other admissible evidence which is unfavorable to West (such as testimony from Parrish). A jury could find that West did not act in self-defense, which would mean that any damages for bodily injury to Parrish would not be covered by the Policy.

### C. Parrish's Argument that West was Intoxicated

Parrish has filed his own brief in opposition to AmGUARD's motion for summary judgment. He argues that summary judgment is not appropriate because of a fact issue over whether West was intoxicated. Parrish stated at West's sentencing hearing that West was drunk when the altercation occurred.[2] *See* Doc. 19-1 at PAGEID 236. According to Parrish, if West was drunk then he could

---

[2] West denies this in his affidavit, explaining that he had limited himself to a "few drinks" because he was the designated driver that evening. West Aff., p. 1.

not have formed the mental state necessary to have expected or intended to cause bodily injury to Parrish.

The Court must reject Parrish's argument. Even if Parrish could prove that West was intoxicated during the altercation, Ohio law is clear that "voluntary intoxication does not prevent an insured from forming the requisite intent required for application of the intended or expected exclusion of an insurance policy." *Bachman v. State Farm Fire & Cas. Co.*, 2016-Ohio-3220, ¶ 18, 2016 WL 3057916, at *3, n. 2 (Ohio Ct. App. May 31, 2016) (citing *Grange Mut. Cas. Co. v. Gore*, No. CA96–08–076, 1997 WL 249949, *3 (Ohio Ct. App. May 12, 1997)). As one court put it: "[A]n insured cannot be heard to argue that he did not intend to do an otherwise intentional act on the basis that he was voluntarily intoxicated and thereby claim coverage under an insurance policy that excludes coverage for intentional acts. The law cannot be perverted to reach a result which would be inimical to public policy." *Bodager v. Chapman*, No. OT-94-031, 1995 WL 84745, at *4 (Ohio Ct. App. Mar. 3, 1995) (internal quotation marks omitted).

## IV.    Conclusion

For the reasons stated above, the respective motions for summary judgment filed by AmGUARD and West (Docs. 16, 26) are DENIED. The parties are instructed to file a joint report with the Court within 30 days of the date of this Order concerning the status of the civil assault action brought by Parrish against West in state court.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: March 4, 2026

10